**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ARIANNA GOODMAN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HOWARD LUTNICK, *et al.*,<br><br>Defendants. | Civil Action No. 8:25-cv-02097-LKG<br><br>Dated: September 23, 2026 |

**MEMORANDUM OPINION**

## I. INTRODUCTION

In this putative class action matter, the Plaintiffs, Arianna Goodman, Sarah Scott, Christine Buckel and Jennifer Raulin, on behalf of themselves and other similarly situated individuals, bring claims under the Privacy Act, 5 U.S.C. § 552a, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, against the Defendants, Secretary of Commerce Howard Lutnick, the United States Department of Commerce, the National Oceanic and Atmospheric Administration ("NOAA"), NOAA Administrator Dr. Neil Jacobs, the United States DOGE Service, the United States DOGE Service Temporary Organization, DOGE Administrator Amy Gleason, the United States Office of Personnel Management ("OPM"), OPM Director Scott Kupor, the Office of Management and Budget ("OMB"), and OMB Director Russell Vought, arising from the termination of their probationary employment with NOAA.[1] *See generally* ECF No. 1. The Government has moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). ECF Nos. 14 and 14-1. The motion is fully briefed. ECF Nos. 14, 14-1, 18, 24 and 27. No hearing is necessary to resolve the motion. *See* L.R. 105.6 (D. Md. 2025). For the reasons that follow, the Court: (1) **GRANTS-in-PART** the Government's motion to dismiss (ECF No. 14) and (2) **DISMISSES** the complaint **WITHOUT PREJUDICE**.

[1] Neil Jacobs is the current Under Secretary of Commerce for Oceans and Atmosphere and the NOAA Administrator. National Oceanic and Atmospheric Administration, Dr. Neil Jacobs, https://www.noaa.gov/our-people/leadership/dr-neil-jacobs-2025 (last visited Sep. 22, 2026). The current Director of the United States Office of Personnel Management is Scott Kupor. Office of Personnel Management, OPM Director Scott Kupor, https://www.opm.gov/about-us/who-we-are/opm-director-scott-kupor/ (last visited Sep. 22, 2026).

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. Factual Background

In this putative class action matter, the Plaintiffs bring claims under the Privacy Act and the Declaratory Judgment Act arising from the termination of their probationary employment with NOAA. *See generally* ECF No. 1. Specifically, the Plaintiffs assert the following claims in the complaint: (1) violation of the Privacy Act-5 U.S.C. § 552a(g)(1)(C) (all Defendants) (Count I); (2) violation of the Privacy Act-5 U.S.C. § 552a(g)(1)(D) and (e)(6) (Defendants Secretary Lutnick, Commerce, Dr. Jacobs and NOAA) (Count II); and (3) Declaratory Judgment Act (all Defendants) (Count III). *Id.* at ¶¶ 124–144. As relief, the Plaintiffs seek, among other things, certain declaratory relief and to recover monetary damages, attorney's fees and costs from the Government. *Id.* at Prayer for Relief.

<u>The Parties</u>

Plaintiff Arianna Goodman is a resident of the State of Washington, and she was employed by NOAA as a research ecologist at the Northwest Fisheries Science Center. *Id.* at ¶ 14.

Plaintiff Sarah Scott is a resident of the State of Maryland, and she was employed by NOAA as a management and program analyst in the Acquisitions and Grants Office. *Id.* at ¶ 15.

Plaintiff Christine Buckel is a resident of the State of North Carolina, and she was employed by NOAA as a marine biologist in the National Centers for Coastal Ocean Science. *Id.* at ¶ 16.

Plaintiff Jennifer Raulin is a resident of the State of Maryland, and she was employed by NOAA as a program analyst in the Office for Coastal Management. *Id.* at ¶ 17.

Defendant the United States Department of Commerce is an agency of the United States Government. *Id.* at ¶ 19.

Defendant Howard Lutnick is the Secretary of the United States Department of Commerce. *Id.* at ¶ 18.

Defendant the National Oceanic and Atmospheric Administration is an agency of the United States Government and a component of the Department of Commerce. *Id.* at ¶ 21.

---

[2] The facts recited in this Memorandum Opinion are taken from the complaint; the Government's motion to dismiss and the memorandum in support thereof; the Plaintiffs' response in opposition thereto; and the Government's reply brief. ECF Nos. 14, 14-1, 18 and 24. Unless otherwise stated herein, the facts are undisputed.

Defendant Dr. Neil Jacobs is the Acting Under Secretary of Commerce for Oceans and Atmosphere and the NOAA Administrator. *Id.* at ¶ 20.

Defendant United States DOGE Service is an agency of the United States Government. *Id.* at ¶ 23.

Defendant United States DOGE Service Temporary Organization is an agency of the United States Government and a subdivision within the United States DOGE Service. *Id.* at ¶ 24.

Defendant Amy Gleason is the DOGE Administrator. *Id.* at ¶ 22.

Defendant the United States Office of Personnel Management is an agency of the United States Government. *Id.* at ¶ 26.

Defendant Scott Kupor is the Director of the United States Office of Personnel Management. *Id.* at ¶ 25.

Defendant the Office of Management and Budget is an agency of the United States Government and a subdivision within the Executive Office of the President. *Id.* at ¶ 28.

Defendant Russell Vought is the Director of the Office of Management and Budget. *Id.* at ¶ 27.

<u>Case Overview</u>

The four named Plaintiffs in this putative class action matter are former probationary employees of the National Oceanic and Atmospheric Administration. *Id.* at ¶¶ 14-17 and 79-101. In February 2025, NOAA terminated the Plaintiffs' employment. *Id.* at ¶¶ 81, 86, 92 and 98. The Plaintiffs allege that the reason given for their termination was performance-related, despite the fact that they received positive performance reviews during the probationary period of their employment. *Id.* at ¶¶ 79-102. And so, the Plaintiffs contend that the Defendants violated the Privacy Act, by relying on records that were incomplete or inaccurate to invoke job performance as the reason for their terminations, and by disseminating termination notices incorrectly stating that their terminations were based on performance. *Id.* at ¶¶ 124-142.

<u>The Trump Administration's Guidance On Probationary Employees</u>

As background, on January 20, 2025, OPM issued a memorandum entitled "Guidance on Probationary Periods, Administrative Leave and Details" that provides guidance to federal agencies about "probationary periods," including the guidance that "[p]robationary periods are an essential tool for agencies to assess employee performance." *Id.* at ¶ 33; *see also* U.S. Off. of Pers. Mgmt., Guidance on Probationary Periods, Administrative Leave and Details (Mar. 4, 2025) (revising Jan. 20, 2025,

memorandum), https://www.opm.gov/media/yh3bv2fs/guidance-on-probationary-periods-administrative-leave-and-details-1-20-2025-final.pdf (last visited Sep. 23, 2026). This memorandum, among other things, directs federal agencies to "identify all employees on probationary periods" and to "send a report to OPM listing all such employees," by January 24, 2025. ECF No. 1 at ¶ 33.

The Plaintiffs alleged that, on February 12, 2025, OPM sent an email to federal agencies that, among other things, directs these agencies to "action those you know you wish to separate from by the end of the day tomorrow, [February 13, 2025], using the attached template letter." *Id.* at ¶ 36. The February 12, 2025, email also directs federal agencies to "update the previous probationary employee spreadsheet you've sent" to include employee-specific data, including, "[w]hich probationary employees have been terminated," "an explanation" as to the employees who would be retained, whether "each probationary employee" had "opted into the deferred resignation program," whether the agency had "signed a written deferred resignation agreement" with the employee, and the "[p]robation end date." *Id.* at ¶ 37. The template termination notice attached to this email also states that: "The Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest." *Id.* at ¶ 38.

The Plaintiffs alleged that, on February 14, 2025, OPM sent an email to federal agencies directing the agencies to "separate probationary employees that [the agencies] have not identified as mission-critical no later than end of the day Monday, [February] 17." *Id.* at ¶ 41. In this email, OPM provides guidance on how to measure "[a]n employee's performance," instructs agencies to determine the "fitness" and "qualifications" of employees, and directs that "only the highest-performing probationers" in certain areas "should be retained." *Id.* In addition, on February 26, 2025, OPM and OMB issued joint guidance regarding Executive Order 14210, which is entitled "Implementing the President's Department of Government Efficiency Workforce Optimization Initiative" (Feb. 11, 2025) and directs federal agencies to reduce the federal workforce by "[r]emoving underperforming employees . . . and continuing to evaluate probationary employees." *Id.* at ¶ 51; *see also* Office of Mgmt. and Budget & Off. of Pers. Mgmt., Guidance on Agency RIF and Reorganization Plans Requested by Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative (Feb. 26, 2025), https://content.govdelivery.com/attachments/USOPM/2025/02/26/file_attachments/317555

3/OPM-OMB%20Memo%20Guidance%20on%20Agency%20RIF%20and%20Reorganization%20Plans%20Requested%20by%20Implementing%20The%20President%E2%80%99s%20%E2%80%9CDepartment%20of%20Government%20Efficiency%E2%80%9D%20Workforce%20Optimization%20Initiative%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.pdf (last visited Sep. 23, 2026).

Relevant to this case, the Plaintiffs allege that, in February 2025, representatives from DOGE visited NOAA's offices and gained access to the agency's information technology systems. ECF No. 1 at ¶ 57. The Plaintiffs also allege that, on February 27, 2025, hundreds of probationary employees employed by NOAA were "abruptly fired without notice or warning." *Id.* at ¶ 59.

In this regard, the Plaintiffs allege that officials at NOAA had been ordered "to fire 'everyone on probationary status' . . . as part of the ongoing effort by President Donald Trump's administration to slash the size of the federal bureaucracy and budget." *Id.* And so, the Plaintiffs allege that the probationary employees terminated by NOAA on February 27, 2025, received the following justification for the termination of their employment: "[T]he Agency finds that you are not fit for continued employment because your ability, knowledge and/or skills do not fit the Agency's current needs." *Id.* at ¶ 60 (alteration in original).

<u>The Plaintiffs' Employment At NOAA</u>

Plaintiff Arianna Goodman worked at NOAA in a probationary capacity as a research ecologist for the Northwest Fisheries Science Center in the National Marine Fisheries Service. *Id.* at ¶ 80. The Plaintiffs allege that NOAA terminated Ms. Goodman's employment on February 27, 2025, despite the fact that she only received positive feedback on her job performance. *Id.* at ¶ 81. In this regard, the Plaintiffs allege that Ms. Goodman received a termination notice stating that she was "not fit for continued employment" based on her "ability, knowledge, and/or skills." *Id.* But the Plaintiffs allege that there was no indication in Ms. Goodman's personnel records, or from any of her supervisors, that she was not meeting or exceeding expectations in the workplace. *Id.* at ¶ 82. And so, the Plaintiffs allege that Ms. Goodman has, among other things, suffered lost wages and benefits, and incurred out-of-pocket expenses for medical care, as a result of the termination of her employment. *Id.* at ¶ 83.

Plaintiff Sarah Scott worked for NOAA in a probationary capacity as a management and program analyst in the Policy and Oversight Division of the Acquisitions and Grants Office. *Id.* at ¶ 85. The Plaintiffs allege that NOAA terminated

Ms. Scott's employment on February 27, 2025, despite the fact that she only received positive feedback on her job performance. *Id.* at ¶ 86. In this regard, the Plaintiffs allege that Ms. Scott received the same termination notice as Ms. Goodman stating that she was "not fit for continued employment" based on her "ability, knowledge, and/or skills." *Id.* But the Plaintiffs allege that there was no indication in Ms. Scott's personnel records, or from any of her supervisors, that she was not meeting or exceeding expectations in the workplace. *Id.* at ¶ 87. And so, the Plaintiffs allege that Ms. Scott has, among other things, suffered lost wages and benefits, and been forced to pay significant monthly premiums to keep her health insurance coverage, as a result of the termination of her employment. *Id.* at ¶ 89.

Plaintiff Christine Buckel began her career at NOAA in 2002, working as a biological science technician and she was later promoted to the position of marine ecologist. *Id.* at ¶ 91. In 2024, Ms. Buckel was promoted to the position of marine biologist and she also led NOAA's Coastal Ecosystem Prediction System Project. *Id.* As a result of her most recent promotion, Ms. Buckel was working in a probationary capacity as of February 27, 2025. *Id.*

The Plaintiffs allege that NOAA terminated Ms. Buckel's employment on February 27, 2025, despite the fact that she only received positive feedback on her job performance during her tenure at NOAA. *Id.* at ¶ 92. The Plaintiffs also allege that Ms. Buckel received the same termination notice that was sent to Ms. Goodman and Ms. Scott. *Id.* But the Plaintiffs allege that there was no indication in Ms. Buckel's personnel records, or from any of her supervisors, that she was not meeting or exceeding expectations in the workplace. *Id.* at ¶ 93. And so, the Plaintiffs allege that Ms. Buckel has, among other things, suffered lost wages and benefits, and had to pay more for her new health insurance, as a result of the termination of her employment. *Id.* at ¶ 95.

Lastly, Plaintiff Jennifer Raulin worked for NOAA in a probationary capacity as a program analyst in the Office for Coastal Management in the National Ocean Service. *Id.* at ¶ 97. The Plaintiffs allege that NOAA terminated Ms. Raulin's employment on February 27, 2025, despite the fact that she had only received positive feedback on her job performance. *Id.* at ¶ 98. The Plaintiffs also allege that Ms. Raulin received the same termination notice that was sent to the other named Plaintiffs in this case. *Id.* And so, the Plaintiffs allege that Ms. Raulin has, among other things, suffered lost wages and benefits, and incurred additional out-of-pocket expenses for medical care, as a result of the termination of her employment. *Id.* at ¶ 100.

The Plaintiffs' Claims

The Plaintiffs allege in the complaint that the termination of their employment was the result of a coordinated effort by the leaders of OPM, DOGE, OMB, the Department of Commerce and NOAA. *Id.* at ¶ 103. In this regard, the Plaintiffs allege that the leadership at NOAA was pressured by DOGE to implement the firings of probationary employees. *Id.* at ¶ 108. The Plaintiffs also allege that the Trump Administration has been "publicly hostile" to the federal workforce. *Id.* at ¶¶ 111-115. And so, the Plaintiffs contend in this putative class action that the Defendants' animus towards federal workers led the Defendants to intentionally and/or willfully violate the Privacy Act, by relying on inaccurate and/or incomplete personnel records to terminate probationary employees for supposedly "poor performance," without any supporting evidence or documentation. *Id.* at ¶ 116.

Specifically, in Count I of the complaint the Plaintiffs allege that the Defendants violated Section 552a(g)(1)(C) of the Privacy Act, by maintaining "inaccurate, irrelevant, untimely, and/or incomplete personnel records [that] caused them to terminate [the] Plaintiffs' employment, supposedly based on poor job performance, which was an adverse determination." *Id.* at ¶ 126. The Plaintiffs also allege that the Defendants have continued to maintain inaccurate, irrelevant, untimely, and/or incomplete personnel records related to these unlawful terminations, since the termination of their employment. *Id.* at ¶ 127. And so, the Plaintiffs contend that they have suffered harm, including actual damages, as a result of the Defendants' conduct. *Id.* at ¶ 128.

In Count II of the complaint, the Plaintiffs allege that Defendants Secretary Lutnick, the Department of Commerce, Dr. Jacobs, and NOAA also violated Sections 552a(g)(1)(D) and (e)(6) of the Privacy Act, by disseminating "termination notices stating that [their] terminations were based on performance, [because] those were inaccurate records." *Id.* at ¶ 135. In this regard, the Plaintiffs allege that certain terminated NOAA employees have been receiving SF-50 forms, which officially document their separation from the Government and provide unsatisfactory job performance as the reason for the terminations. *Id.* at ¶ 75. The Plaintiffs also allege that, "[w]hen [Defendant] NOAA, on behalf of Commerce, disseminated SF-50s stating that the Plaintiffs' terminations were based on performance, those were inaccurate records . . . ." *Id.* at ¶ 136. And so, the Plaintiffs contend that "the dissemination of these inaccurate records caused adverse effects . . ., including diminished employment opportunities and other consequences of carrying a for-cause termination on their employment record forever." *Id.* at ¶ 140.

Lastly, in Count III of the complaint, the Plaintiffs seek declaratory relief, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, regarding the Defendants' maintenance of their personnel records. *Id.* at ¶¶ 143-144. And so, the Plaintiffs also request a declaratory judgment that the "Defendants' maintenance of inaccurate, irrelevant, untimely, and incomplete records in connection with the mass termination of probationary employees at NOAA was unlawful." *Id.* at Prayer for Relief.

**B. Relevant Procedural Background**

The Plaintiffs commenced this putative class action on June 30, 2025. ECF No. 1. On October 3, 2025, the Government filed a motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), and a memorandum in support thereof. ECF Nos. 14 and 14-1.

On October 17, 2025, the Plaintiffs filed a response in opposition to the Government's motion to dismiss. ECF No. 18. On December 4, 2025, the Government filed a reply brief. ECF No. 24. On December 8, 2025, the Plaintiffs filed a surreply. ECF No. 27.

The Government's motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III. LEGAL STANDARDS

**A. Fed. R. Civ. P. 12(b)(1)**

A motion to dismiss for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), is a challenge to the Court's "competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). In this regard, the United States Supreme Court has explained that subject-matter jurisdiction is a "threshold matter" that is "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). And so, an objection that the Court lacks subject-matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

The United States Court of Appeals for the Fourth Circuit has also explained that the plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Given this, the Court "regard[s] the pleadings as mere evidence on the issue[] and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," when deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Id.* (citation omitted). And so, if a plaintiff "fails to allege facts upon which the court may base jurisdiction," then the Court

should grant a motion to dismiss for lack of subject-matter jurisdiction. *Davis*, 367 F. Supp. 2d at 799.

**B. Fed. R. Civ. P. 12(b)(6)**

To survive a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of the plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet, Ltd.*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

**C. The CSRA And The Privacy Act**

Relevant to the pending motion to dismiss, the Supreme Court has recognized that the Civil Service Reform Act ("CSRA") established a comprehensive system for reviewing personnel action taken against federal employees and applicants. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012); *see also Mittleman v. U.S. Treasury*, 773 F. Supp. 442, 449 (D.D.C. 1991); 5 U.S.C. § 2302(a)(2)(A)(i)-(xii) (defining "personnel actions"). Given this, courts have held that the "CSRA provides the exclusive means for federal employees to obtain judicial review of adverse personnel actions even in circumstances where . . . the CSRA itself forecloses review." *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 775 (D.C. Cir. 2025) (citing *United States v. Fausto*, 484 U.S. 439, 447 (1988)).

"[T]he 'failure to include' any relief 'within the remedial scheme of so comprehensive a piece of legislation [as the CSRA] reflects a congressional intent that no judicial relief be available.'" *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) (quoting *Carducci v. Regan*, 714 F.2d 171, 174 (D.C. Cir. 1983)). And so, the exclusion of a class of employees from the protections of the CSRA does not permit such employees to pursue other judicial

remedies that would be available, but for the enactment of the CSRA. *See, e.g.*, *Saul v. United States*, 928 F.2d 829, 840 (9th Cir. 1991); *Am. Postal Workers Union v. USPS*, 940 F.2d 704, 709 (D.C. Cir. 1991); *Collins v. Bender*, 195 F.3d 1076, 1079 (9th Cir. 1999); *Fornaro*, 416 F.3d at 67.

It is also well-established that the Privacy Act "contains a comprehensive and detailed set of requirements for the management of confidential records held by [federal agencies]," and that this statute provides for a cause of action for failure to maintain accurate records of employees of federal agencies and a mechanism to challenge the accuracy of such records. *F.A.A. v. Cooper*, 566 U.S. 284, 287 (2012); 5 U.S.C. § 552a; *see also Peter B. v. C.I.A.*, 620 F. Supp. 2d 58, 74-75 (D.D.C. 2009) (holding that the plaintiff stated a claim under Section 552a(e) of the Privacy Act based on the plaintiff's allegations that the Government violated that section by failing to maintain accurate and complete records "necessary to denote [the plaintiff's] true employment status with the CIA"). And so, an individual may bring a civil action to recover monetary damages under the Privacy Act if a federal agency:

> [F]ails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C).

The Privacy Act also permits an individual to bring a claim for money damages, if a federal agency fails to comply with any other provision of the Act, or its regulations, "in such a way as to have an adverse effect on an individual." *Id*. at § 552a(g)(1)(D) (the Privacy Act's "catchall" provision). In addition, the Privacy Act requires that "[e]ach agency that maintains a system of records shall . . . prior to disseminating any record about an individual to any person other than an agency, . . . make reasonable efforts to assure that such records are accurate, complete, timely and relevant for agency purposes." *Id*. at § 552a(e)(6).

If the Government's violation of the Privacy Act is intentional or willful, a plaintiff may recover her actual damages. *Richardson v. Bd. of Governors of Fed. Rsrv. Sys.*, 288 F. Supp. 3d 231, 236 (D.D.C. 2018), *aff'd* 2018 WL 4103305 (D.C. Cir. Aug. 15, 2018). But the plaintiff must show a causal link between such actual damages and the alleged Privacy Act violation. *See, e.g.*, *Thompson v. Dep't of State*, 400 F. Supp. 2d 1, 19 (D.D.C. 2005), *aff'd*, 210 F. App'x 5 (D.C. Cir. 2006) (holding that the plaintiff must "show not only that the

inaccurate records were considered in making the determination, but that an error in the records *caused* the determination" (emphasis in original)).

Lastly, while the Fourth Circuit has not yet addressed the interplay between the CSRA and the Privacy Act, several other courts have considered this issue. For example, in *Kleiman*, the United States Court of Appeals for the District of Columbia Circuit held that a former federal employee could not seek judicial review of the denial of a request that his position to be reclassified under the Privacy Act, because the claim challenged the agency's personnel decision and was, thus, judicially unreviewable pursuant to the CSRA. *Kleiman v. Dep't of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992). Similarly, in *Peter B. v. C.I.A.*, the United States District Court for the District of Columbia held that the Privacy Act "allows for amendment of factual or historical errors," but the statute is not the proper vehicle for "amending the *judgments* of federal officials . . . as those judgments are reflected in records maintained by federal agencies." *Peter B.*, 620 F. Supp. 2d at 76 (quoting *Kleiman*, 956 F.2d at 337-38) (emphasis in original). Given this, a claim challenging the judgments made by an agency regarding employment records, rather than factual inaccuracies contained in such records, must be brought under the CSRA. *See id.* And so, several courts have concluded that the Privacy Act does not confer jurisdiction on the district courts to review personnel decisions that are precluded from judicial review under the CSRA. *Id.*; *see also Henderson v. SSA*, 908 F. 2d. 559, 560-61 (10th Cir. 1990); *Houlihan v. OPM*, 909 F.2d 383, 385 (9th Cir. 1990).

## IV. ANALYSIS

The Government has moved to dismiss this putative class action matter, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), upon the following grounds: (1) the Court lacks subject-matter jurisdiction over Counts I and II of the complaint, because the Plaintiffs' Privacy Act claims are precluded by the CSRA; (2) the Plaintiffs fail to state plausible Privacy Act claims, because they seek to collaterally attack the Government's personnel decisions; (3) the Plaintiffs fail to state a claim under Section 552a(g)(1)(C) of the Privacy Act, because they do not allege that NOAA's reliance on their favorable performance review proximately caused the termination of their employment; (4) the Plaintiffs fail to state a plausible claim under Sections 552a(g)(1)(D) and (e)(6) of the Privacy Act, because the only records that the Plaintiffs allege NOAA disseminated were disseminated to the Plaintiffs; (5) the Plaintiffs fail to allege facts to show an intentional or willful violation of the Privacy Act; (6) the Plaintiffs fail to allege compensable damages under the Privacy Act, because the alleged harms in the complaint are not traceable to the inaccuracies in their termination notices and/or SF-50s; and

(7) the Plaintiffs' declaratory judgment claim must also be dismissed, because there is no valid cause of action before the Court. ECF No. 14-1 at 8-26. And so, the Government requests that the Court dismiss the complaint. *Id.* at 26.

In their response in opposition to the Government's motion to dismiss, the Plaintiffs counter that the Court should not dismiss this matter, because: (1) the CSRA does not preclude their Privacy Act claims; (2) they have plausibly alleged Privacy Act violations in the complaint; and (3) the Government's remaining arguments for dismissing their claims fail. ECF No. 18 at 8-30. And so, the Plaintiffs request that the Court deny the Government's motion to dismiss. *Id.* at 30.

For the reasons that follow, a careful reading of the complaint shows that the Plaintiffs seek to challenge NOAA's decision to terminate their probationary employment and to recover damages from the Government for alleged injuries resulting from the termination of their employment. A careful reading of the complaint also shows that the Plaintiffs do not state plausible claims under the Privacy Act and the Declaratory Judgment Act. Given this, the Plaintiffs' claims in this action fall within the scope of the CSRA, which provides the exclusive means for the Plaintiffs to obtain judicial review of this adverse personnel action. And so, the Court: (1) GRANTS-in-PART the Government's motion to dismiss (ECF No. 14) and (2) DISMISSES the complaint WITHOUT PREJUDICE.

**A. The Plaintiffs Challenge The Termination Of Their Employment**

As an initial matter, a careful reading of the complaint shows that the Plaintiffs seek to challenge the termination of their probationary employment in this civil action. The four named Plaintiffs in this putative class action matter are former probationary employees of NOAA, who were terminated from their positions in February 2025. ECF No. 1 at ¶¶ 14-17 and 79-102. In the complaint, the Plaintiffs allege that NOAA terminated their employment for poor performance, despite the fact that they only received positive feedback and performance reviews during their tenure with the agency. *Id.* at ¶¶ 81, 82, 86, 92, 93, 98 and 99.

In addition, the Plaintiffs allege that they received essentially identical termination notices, stating that they were "not fit for continued employment" based on their "ability, knowledge, and/or skills." *Id.* at ¶¶ 81, 86, 92 and 98. But the Plaintiffs contend that there was no indication in their personnel records, or from any of their supervisors, that they were not meeting or exceeding expectations in the workplace. *Id.* at ¶¶ 82, 87, 93 and 99. And so, the Plaintiffs also contend that they have suffered lost wages and

benefits, and incurred out-of-pocket expenses for health care and health insurance, as a result of the termination of their employment. *Id.* at ¶¶ 83, 89, 95 and 101.

The Plaintiffs also allege that the reason for the termination of their employment was the Defendants' animus towards federal probationary workers. In this regard, the Plaintiffs allege in the complaint that OPM sent an email to federal agencies on February 12, 2025, that, among other things, directed these agencies to "action those you know you wish to separate from by the end of the day tomorrow, [February 13, 2025], using the attached template letter." *Id.* at ¶ 36. The Plaintiffs also allege that, in February 2025, representatives from DOGE visited NOAA's offices and that, shortly thereafter, hundreds of probationary employees at NOAA were "abruptly fired with no notice or warning" on February 27, 2025. *Id.* at ¶¶ 57 and 59. Notably, the Plaintiffs allege that officials at NOAA had been ordered "to fire 'everyone on probationary status' . . . as part of the ongoing effort by [the Trump Administration] to slash the size of the federal bureaucracy and budget." *Id.* at ¶ 59.

Given this, the Plaintiffs allege that the termination of their employment was the result of a coordinated effort by the leaders of OPM, DOGE, OMB, the Department of Commerce and NOAA, and that the Trump Administration has been publicly hostile to the federal workforce. *Id.* at ¶¶ 103 and 111-115. And so, the Plaintiffs contend that the Defendants' animus toward federal workers "led [the] Defendants to intentionally and/or willfully violate the Privacy Act, by relying on inaccurate and/or incomplete personnel records to terminate probationary employees, including at NOAA, for supposedly 'poor performance' without any supporting evidence or documentation." *Id.* at ¶ 116.

Given these factual allegations, the Court agrees with the Government that the gravamen of the Plaintiffs' claims in this case is a challenge to the Defendants' decision to terminate their employment. *See, e.g.*, *id.* at ¶¶ 45, 68, 81, 86, 92, 98 and 116.

**B. The Plaintiffs Fail To State A Privacy Act Claim**

While the Plaintiffs characterize their claims in this case as arising under the Privacy Act, a careful reading of the complaint also makes clear that the Plaintiffs do not state plausible Privacy Act claims in the complaint for two reasons.

First, the Plaintiffs fail to state a claim under Section 552a(g)(1)(C) of the Privacy Act, because the complaint lacks factual allegations to show a causal connection between the alleged inaccuracies and/or errors in their personnel records and the termination of their employment. To state a claim under Section 552a(g)(1)(C), the Plaintiffs must allege facts to show that: (1) they have been aggrieved by an adverse determination; (2) NOAA failed to

maintain their records with a degree of accuracy to assure fairness in the determination; (3) NOAA's reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) NOAA intentionally and willfully failed to maintain accurate records. *Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996). But the complaint does not contain sufficient factual allegations to show a causal connection between the alleged inaccuracies and/or errors in the Plaintiffs' personnel records and the Defendants' decision to terminate the Plaintiffs' employment.

In the complaint, the Plaintiffs generally allege that the Defendants violated Section 552a(g)(1)(C), by maintaining "inaccurate, irrelevant, untimely, and/or incomplete personnel records that caused them to terminate the Plaintiffs' employment, supposedly based on poor job performance, which was an adverse determination." ECF No. 1 at ¶ 126. But the Plaintiffs also allege throughout the complaint that the reason for the termination of their employment was the Defendants' animus towards federal workers, rather than the alleged inaccuracies and/or errors in their personnel records. *Id.* at ¶¶ 12 and 111-117. Given this, the factual allegations in the complaint, taken as true, simply do not show a causal connection between the alleged inaccuracies and/or errors in the Plaintiffs' personnel records and the termination of their employment.

The implausibility of the Plaintiffs' Section 552a(g)(1)(C) Privacy Act claim is also made evident by their claim for damages. In the complaint, the Plaintiffs allege that they have suffered lost wages and benefits, and incurred out-of-pocket expenses for health care and health insurance, as a result of the termination of their employment. *Id.* at ¶¶ 83, 89, 95 and 101. But, again, the factual allegations in the complaint make clear that the Plaintiffs' alleged injuries arise from the termination of their employment, not from the alleged inaccuracies and/or errors in their personnel records. *Id.* at ¶¶ 83, 89, 95 and 101 (alleging that the Plaintiffs have suffered damages "[a]s a result of [their] unlawful termination").

Given this, the Plaintiffs also do not sufficiently allege facts in the complaint to show that their damages arose from the alleged inaccuracies and/or errors in their personnel records, to state a claim under the Privacy Act. *See, e.g.*, *Thompson v. Dep't of State*, 400 F. Supp. 2d 1, 19 (D.D.C. 2005), *aff'd*, 210 F. App'x 5 (D.C. Cir. 2006) (holding that the plaintiff must "show not only that the inaccurate records were considered in making the determination, but that an error in the records *caused* the determination") (emphasis in original). And so, their Privacy Act claim in Count I of the complaint is not plausible.

*Hubbard v. EPA Administrator*, 809 F.2d 1, 5 (D.C. Cir. 1986); *see also* Fed. R. Civ. P. 12(b)(6).

Second, while on somewhat firmer footing, the Plaintiffs' Privacy Act claim based upon the dissemination of allegedly false SF-50 forms regarding the termination of their employment is also not plausible. To state a claim under Section 552a(e)(6) of the Privacy Act, the Plaintiffs must allege facts to show that: (1) the information disseminated was maintained within a system of records; (2) NOAA improperly disseminated the information; (3) the dissemination was intentional or willful; and (4) the dissemination adversely affected them. *Akl v. Sebelius*, No. 08-461, 2011 WL 13273368, at *6 (D.D.C. Jan. 13, 2011). But the complaint lacks factual allegations to show that the dissemination of the Plaintiffs' personnel records adversely affected them.

Notably, in the complaint, the Plaintiffs allege that certain terminated probationary employees, including Plaintiffs Sarah Scott, Christine Buckel and Jennifer Raulin, have "started receiving" SF-50 forms that adopt unsatisfactory job performance as the reasons for their termination, and that, "[w]hen Defendant NOAA, on behalf of Commerce, disseminated SF-50s stating that [the] Plaintiffs' terminations were based on performance, those were inaccurate records." ECF No. 1 at ¶¶ 75, 88, 94, 100 and 136. And so, the Plaintiffs contend that the dissemination of these inaccurate records caused adverse effects, including diminished employment opportunities and "other consequences of carrying a for-cause termination on their employment record forever." *Id.* at ¶ 140.

But the Plaintiffs do not allege that Plaintiff Arianna Goodman received an SF-50 form. *See id.* at ¶¶ 6 and 79-83. Nor do they allege that all members of the proposed Class of Plaintiffs received this form. *Id.* at ¶ 118.[3] The Government also argues with persuasion that the complaint lacks factual allegations to explain how the Plaintiffs were harmed, within the context of the Privacy Act, by NOAA's dissemination of the allegedly inaccurate SF-50 forms to the Plaintiffs themselves. ECF No. 14-1 at 17-18; ECF No. 24 at 16.

---

[3] Defining the proposed Class as follows:

> All individuals who (1) were employed by the U.S. Department of Commerce, in the National Oceanic and Atmospheric Administration, in a probationary status (including trial periods or other types of probation) as of February 27, 2025; and (2) received a "Notification of Termination During Trial Period" dated on or around February 27, 2025.

ECF No. 1 at ¶ 118.

Given these concerns, the Court is not satisfied that the Plaintiffs' Privacy Act claim in Count II of the complaint fits within the boundaries of that statute. *See Hubbard*, 809 F.2d at 5. And so, the Plaintiffs also fail to state a claim under Sections 552a(g)(1)(D) and (e)(6) the Privacy Act. Fed. R. Civ. P. 12(b)(6).

**C. The CSRA Precludes Judicial Review Of The Plaintiffs' Claims**

Because the Court concludes that the Plaintiffs seek to challenge the termination of their probationary employment in this putative class action matter, and that they do not otherwise state plausible Privacy Act claims in the complaint, the Court agrees with the Government that judicial review of the Plaintiffs' claims in this forum is precluded by the CSRA. As both parties acknowledge, the Supreme Court has long recognized that the CSRA established a comprehensive system for reviewing personnel action taken against federal employees and applicants. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012); *see also Mittleman v. U.S. Treasury*, 773 F. Supp. 442, 449 (D.D.C. 1991); 5 U.S.C. § 2302(a)(2)(A)(i)-(xii) (defining "personnel actions"). Given this, courts have held that the "CSRA provides the exclusive means for federal employees to obtain judicial review of adverse personnel actions even in circumstances where . . . the CSRA itself forecloses review." *Nat'l Treasury Emps. Union*, 149 F.4th at 775 (citing *United States v. Fausto*, 484 U.S. 439, 447 (1988)); *see also Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) (holding that "the 'failure to include' any relief 'within the remedial scheme of so comprehensive a piece of legislation [as the CSRA] reflects a congressional intent that no judicial relief be available'" (quoting *Carducci v. Regan*, 714 F.2d 171, 174 (D.C. Cir. 1983))); *Saul v. United States*, 928 F.2d 829, 840 (9th Cir. 1991); *Am. Postal Workers Union v. USPS*, 940 F.2d 704, 709 (D.C. Cir. 1991) (holding that the exclusion of a class of employees from the protections of the CSRA does not permit such employees to pursue other judicial remedies that would be available but for the enactment of the CSRA); *Collins v. Bender*, 195 F.3d 1076, 1079 (9th Cir. 1999) (same).

While the Fourth Circuit has not yet considered the interplay between the CSRA and the Privacy Act, the courts that have done so have consistently held that federal employees cannot bring personnel challenges under the Privacy Act, when the claims seek to challenge the agency's personnel decision and, thus, fall within the scope of the CSRA. *See Kleiman v. Dep't of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992) (holding that a former federal employee could not seek judicial review, under the Privacy Act, of the denial of his request that his position be reclassified, because this claim sought to challenge the agency's personnel decision and was judicially unreviewable under the CSRA); *Peter B. v. C.I.A.*, 620 F. Supp.

2d 58, 76 (D.D.C. 2009) (holding that if a plaintiff seeks to challenge the judgments made by an administrative agency regarding his or her employment records, rather than factual inaccuracies of such records, the plaintiff must bring the claim under the CSRA). That is the kind of case brought by the Plaintiffs here.

Notably, the complaint makes clear that the Court must consider and analyze the "judgments of federal officials … as those judgments are reflected in records maintained by federal agencies," to resolve the Plaintiffs' claims challenging the "unlawful" termination of their probationary employment. *Peter B.*, 620 F. Supp. 2d at 76 (quoting *Kleiman v. Dep't of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992)). Notably, the Plaintiffs allege in the complaint that the termination of their employment is unlawful, because the Defendants pressured NOAA to terminate federal probationary employees, by, among other things, issuing certain executive orders, agency guidance and emails. ECF No. 1 at ¶¶ 33-60, 103 and 111-115. And so, the Court must consider the judgments reflected in these directives, and in the notices terminating the Plaintiffs' employment, to resolve the Plaintiffs' claims.

The CSRA unquestionably forecloses such judicial review by this Court. *Elgin*, 567 U.S. at 5; *Fausto*, 484 U.S. at 455; *see also Mittleman*, 773 F. Supp. at 449. In addition, the fact that the Plaintiffs may not have another avenue for judicial review of their claims under the CSRA, because they are former probationary federal employees, does not alter this result. *See* 5 U.S.C. § 7511 (defining "employee" under the CSRA). Courts have long held that judicial review of personnel actions involving federal employees is not available in the district courts, even when such review is foreclosed under the CSRA. *See, e.g.*, *Nat'l Treasury Emps. Union*, 149 F.4th at 775; *Fausto*, 484 U.S. at 447; *Fornaro*, 416 F.3d at 67.

The Plaintiffs' arguments to show that the Court may consider their claims are also not convincing. The Plaintiffs first argue that the CSRA does not preclude judicial review of their claims, because they may recover damages for an adverse employment action caused by an inaccurate or incomplete record under the Privacy Act. ECF No. 18 at 11-12. The Court agrees that the Plaintiffs can bring such a claim for damages under the Privacy Act, if the adverse employment action at issue was *actually caused* by an inaccurate or incomplete personnel record. *See Hubbard*, 809 F.2d at 5. But they do not do so in this case, because the complaint alleges that NOAA terminated their employment because of the Defendants' animus towards federal workers.

The remaining arguments that the Plaintiffs advance to defeat the Government's motion to dismiss require that they first state a plausible Privacy Act claim in the complaint. ECF No. 18 at 11-20 (arguing that the statutory text of the Privacy Act does not support preclusion,

the *Thunder Basin* framework favors the Plaintiffs and the CSRA's review process has been exhausted). For the reasons discussed above, the Plaintiffs do not state plausible Privacy Act claims in the complaint. Rather, the complaint makes clear that the Plaintiffs seek to fit their understandable objection to the Defendants' decision to terminate their probationary employment into the rubric of a Privacy Act claim. And so, for the reasons also discussed above, the CSRA precludes judicial review of these claims. *Elgin*, 567 U.S. at 5; *Fausto*, 484 U.S. at 455.

In sum, a careful reading of the complaint makes clear that the gravamen of the Plaintiffs' claims in this putative class action matter is a challenge to the termination of their probationary employment at NOAA. Such claims are subject to the CSRA, which precludes judicial review in this forum. While the Plaintiffs may bring a claim under the Privacy Act to challenge alleged factual inaccuracies in their personnel records, they have not alleged facts to support such a claim in the complaint. And so, for these reasons, the Court must DISMISS Counts I and II of the complaint. Fed. R. Civ. P. 12(b)(1) and (b)(6).

The Court observes, however, that the Plaintiffs may be able to address the aforementioned concerns about their Privacy Act claims, by amending the complaint to explain how the alleged inaccurate and/or incomplete personnel records at issue actually caused the termination of their employment, and how the dissemination of these records violates the Privacy Act. Given this, the Court DISMISSES Counts I and II of the complaint WITHOUT PREJUDICE, to afford the Plaintiffs the opportunity to seek leave to amend the complaint, should they wish to do so.[4]

**D. The Court Dismisses The Plaintiffs' Declaratory Judgment Claim**

As a final matter, the Court also DISMISSES the Plaintiffs' Declaratory Judgment Act claim in Count III of the complaint. It is well established that the Declaratory Judgment Act "provides a remedy in cases otherwise in the Court's jurisdiction," but "it does not create an independent cause of action." *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 752 n.6 (D. Md. 2020) (quoting *Elec. Motor and Contracting Co., Inc. v. Travelers Indemnity Co. of Am.*, 235 F. Supp. 3d 781, 793 (E.D. Va. 2017)). Because the Court dismisses the Plaintiffs' Privacy Act claims without prejudice, the Court similarly resolves the Plaintiffs' Declaratory Judgment Act claim in this case. And so, the Court also DISMISSES Count III of the complaint WITHOUT PREJUDICE. Fed. R. Civ. P. 12(b)(6).

---

[4] The Court does not address the remaining arguments raised in the Government's motion to dismiss.

## V. CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS-in-PART** the Government's motion to dismiss (ECF No. 14); and

(2) **DISMISSES** the complaint **WITHOUT PREJUDICE**.

A separate Order consistent with this Memorandum Opinion issued on September 22, 2026.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge